ARPIN and another, Appellants, vs. BOWMAN and another, Respondents.

*September 2 — September 27, 1892.*

*(1–3) Navigable river: Dam maintained at unlawful height: Nuisance: Notice to abate.    (4) Costs.*

1. Permission to repair a dam in a navigable river will be construed, in the absence of evidence to the contrary, merely as permission to repair and maintain it at its legal height, and will not render the person granting such permission liable if the dam is raised and maintained at an unlawful height.

2. The doctrine that a person is not liable for merely continuing a pre-existing nuisance is not applicable where a person rightfully using a public highway (in this case a navigable river) is injured by reason of an illegal obstruction maintained therein.

3. A dam six feet high does not conform to a law authorizing it to be maintained at the height of three feet, even though it has a wide chute near the middle which is only three feet high.

4. The officers' charges for taking the examination of a party under sec. 4096, R. S., are properly taxable as a disbursement.

APPEAL from the Circuit Court for *Columbia* County.

Plaintiffs were running lumber in rafts down the Wisconsin river in the spring of 1890, and claim by their complaint that their rafts were broken and lumber delayed and lost by reason of the illegal height and improper construction of the dam in said river at Kilbourn City, which dam they claim was constructed and maintained by defendants.    The defendant *Bowman* denied everything except

the navigability of the Wisconsin river. The defendant *Munger* alleged that the dam was built and maintained under ch. 424, P. & L. Laws of 1866; denied that it was maintained at an illegal height; alleged that it was provided with a sufficient and properly constructed sluiceway for passage of lumber; denied that plaintiffs suffered any damage by delay or by passing the dam; and charged plaintiffs with negligence in not having proper equipment in men and material to safely run the rapids. It appeared on the trial that the dam, at the time plaintiffs' lumber went over it, was a log structure having a height of about six feet above low-water mark, except that there was a slide or chute about thirty-eight feet wide, near the middle, which was only about three feet above low-water mark.

*Bowman* owned the land on the west side of the river, opposite the dam, having acquired title June 30, 1877. On July 2, 1883, *Munger* obtained title to the land on the east side of the river, together with the dam, water-power, and appurtenances; also the corporate franchise of the Kilbourn Manufacturing Company.

July 11, 1883, *Bowman* and *Munger* jointly executed a contract which, after some recitals, contains the following agreements: " Therefore it is hereby agreed by the said parties that said *Munger* may make such repairs to said dam as he may deem necessary and advisable to operate his said mill, but at his own cost and expense; and in case the said *Bowman*, his heirs or assigns, shall at any time desire to erect mills or machinery on the west side of the river to be operated by water-power created by said dam, and if there shall not be water or head sufficient for that purpose, the said *Munger* agrees to join said *Bowman*, his heirs or assigns, in ' raising ' said dam higher, and increasing said water-power so that the same will be ample to operate the mills and machinery of both parties, and each to bear one half of the cost and expense in so increasing said power,

and each to have one half of said water and power; and in case the said *Munger* shall join the said *Bowman* in increasing said power without unreasonable delay, and pay one half of the cost and expense thereof, then the said *Bowman* agrees he will not use the water or diminish the head so as to materially interfere with the operation of *Munger's* said mill of not exceeding four run of stone and such ordinary machinery as is usual and necessary in a gristmill of four run of stone or less; but in case the said *Munger* refuses or neglects to join said *Bowman* in making or increasing said power as aforesaid, then and in that case both parties shall use all the water and power equally without the restriction herein mentioned, share and share alike in the same."

The evidence shows that *Munger* raised the dam to the height at which it stood when plaintiffs' rafts were broken, but shows no participation by *Bowman* in the repairs at any time. Judgment of nonsuit was directed as to both defendants, and plaintiffs appeal.

For the appellants there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*. They contended, *inter alia*, that as *Bowman* owned one half the dam and water-power, and the raising of the dam by *Munger* was contemplated when the contract was made, *Bowman* is liable for what *Munger* did in raising (by repairing) the dam. *King v. Pedley*, 28 Eng. C. L. 220; *Gandy v. Jubber*, 117 id. 76; Cooley, Torts (2d ed.), 724; *Pierce v. German Soc.* 72 Cal. 180, 183; *Ford v. Roberts*, 108 Pa. St. 489; *Jackman v. Arlington*, 137 Mass. 277; *Leonard v. Storer*, 115 id. 86. No special notice to *Munger* that this dam was a nuisance was necessary to render *Munger* liable. The rule as to notice does not apply when the nuisance is an obstruction in a highway. Cooley, Torts (2d ed.), 729, note 2; *Cobb v. Smith*, 38 Wis. 21, 32–34; *Morris C. & B. Co. v. Ryerson*, 27 N. J. Law, 457, 468–9; *Brown v. C. & S. R.*

Arpin and another vs. Bowman and another.

*Co.* 12 N. Y. 486, 492; *Irvine v. Wood*, 51 N. Y. 224, 229–30; *Matthews v. M. P. R. Co.* 26 Mo. App. 75; *Pierce v. German Soc.* 72 Cal. 180, 183.

*A. L. Sanborn*, for the respondents. *Bowman* is not liable for the creation of a nuisance by *Munger*. He in no way authorized the making or repairing of any unlawful structure. Wood, Nuisance, 951; *Rex v. Pedly*, 1 Ad. & El. 827; *Gandy v. Jubber*, 5 Best & S. 485; *Fish v. Dodge*, 4 Denio, 311; *Pickard v. Collins*, 23 Barb. 444; *Rich v. Basterfield*, 4 Man., Gr. & S. 805; *Brown v. Bussell*, L. R. 3 Q. B. 251; *Chicago v. Robbins*, 2 Black, 418; *Ellis v. Gas Co.* 2 El. & Bl. 767; *Hole v. S. & S. R. Co.* 6 Hurl. & N. 500. *Munger* is not liable without notice of the character of the dam and request to abate given by the plaintiffs. *Conhocton S. R. v. B., N. Y. & E. R. Co.* 51 N. Y. 573; *Bonner v. Welborn*, 7 Ga. 296, 327; Wood, Nuisance, sec. 838.

WINSLOW, J. As to the defendant *Bowman*, the nonsuit was right. The agreement which he made with *Munger*, so far as acted on, amounts simply to a consent that *Munger* might repair the dam. The contract does not show that *Bowman* thereby authorized *Munger* to erect or maintain an illegal structure, and such authority will not be presumed; nor does the evidence show that *Bowman* took any part in the repairs, or in any way approved *Munger's* acts in raising the dam. The contract must therefore be construed as simply empowering *Munger* to repair and maintain the dam at its legal height, which under ch. 424, P. & L. Laws of 1866, was three feet above the usual low-water mark.

As to *Munger* the question is different. There was ample evidence to show that he raised and maintained the dam at a height of about six feet above low-water mark, when he only had the right to raise it three feet above that mark.

Arpin and another vs. Bowman and another.

So far as it exceeded the height allowed by ch. 424, *supra*, it was an illegal structure, maintained by *Munger* in a public water way, and the plaintiff had introduced sufficient evidence to require submission to the jury of the question whether his rafts were broken by reason of the illegal height of the dam.

It is said that *Munger* simply continued a pre-existing nuisancé, and that he cannot be held liable without notice to abate it, under the doctrine of *Slight v. Gutzlaff*, 35 Wis. 675, and *Penruddock's Case*, 5 Coke, 100. We do not question the well-established principle recognized in *Slight v. Gutzlaff*, as applied to nuisances existing on private property when continued by a lessee or grantee. Manifestly, the rule should not obtain where a person rightfully using a public highway is injured by reason of an illegal obstruction maintained therein, and we are satisfied that it does not obtain. *Irvine v. Wood*, 51 N. Y. 224; Cooley, Torts (2d ed.), 729, and notes.

It is said that the effective height of the dam was only the height of the slide or chute, and consequently that, although the major portion of the dam may have been six feet above low-water mark, it should be held to be no higher than the part composing the *chute*. We cannot adopt this view. The chute is a part of the dam, but it cannot be said to be *the dam*. The dam must be held to mean the entire structure.

The defendants took the examination of the plaintiffs under sec. 4096, R. S., before the trial, and taxed as a disbursement the officers' charges for taking such deposition. The plaintiffs excepted to the taxation of this item, and claim that it is not properly taxable. We are of the opinion that the item is properly taxable.

*By the Court.*— Judgment affirmed as to defendant *Bowman*, and reversed and cause remanded for a new trial as to defendant *Munger*.